## JENKINS v. REDDING.

Where the owner of a mining-claim contracts, verbally, with J., for the working thereof, and agrees to pay him a certain sum out of the proceeds of the mine, and J. goes into possession thereof, and while he is working it the owner sells it to a third party, who takes without notice of J.'s contract : *Held*, that his claim is not subject or liable to J.'s contract.

The possession of J. being that of his employer, was not notice to the purchaser.

APPEAL from the District Court of the Fourteenth Judicial District, County of Sierra.

This was a suit in equity, for the purpose of enforcing a lien which the plaintiff claimed on the one-twenty-fourth interest of the defendant in the Oregon Mining Company. The facts are as follows:

Ames and Buss, then owning one-twelfth interest in said company, made a verbal agreement with plaintiff Jenkins, to work their interest in said company, for which Jenkins was to have five dollars per day, to be paid him as it was taken from the claims.

Plaintiff went to work under this contract, and labored for a long period, sometimes representing his employers' interest at the meetings of the company, and drawing a part of the dividends, which were much less than five dollars per day.

While plaintiff was at work, Buss, owning one-twenty-fourth interest, sold it, and the defendant became invested with the interest of Buss, without notice of plaintiff's contract. The Court below decided that plaintiff's possession was notice to defendant, and rendered a decree in favor of plaintiff. Defendant moved for a re-hearing, which being denied, he appealed.

*Vanclief & Stewart, and J. R. McConnell,* for Appellant.

Cited: Coke on Litt., 4a, 4b; Compiled Laws, p. 200, § 6; ib., p. 202, § 25; Merced M. Co. v. Fremont et al., decided April T. S. C., 1857; Caswell v. Distich, 15 Wendell R., 379; Bradish v. Schenck, 8 John. R., 151; Foote v. Colvin, 3 ib., 215; Whipple v. Foote, 2 ib., 418; De Mott v. Hagerman, 8 Cowen Rep., 220; Martin v. Wilson, 1 Denio R., 602; Heywood v. Miller, 3 Hill's N. Y. R., 90; Bird v. Dennison, April T. S. C., 1857: 1 Story's Equity Juris., §§ 63c, 630 and notes, 108, 165, 381, 409–411, 416, 434, 436; 2 Story's Equity, §§ 1502–1505, 1510, and authorities in the notes; Payne v. Campton, 2 Younge & Collyer, 457–464.

The point decided by the Court is simply this:

By virtue of the parol, or rather, verbal executory contract, between Ames and Buss, of the one part, and Jenkins of the other; by which Jenkins was to work the share of Ames and Buss, at the rate of five dollars per day, to be paid as it came out from the claims, he (Jenkins) obtained a lien on the share itself. In other words, he thereby obtained an equitable interest in the mining-claim or interest, for equity regards a lien as an interest in the property.

We propose to show: First, that by the Statute of Frauds and Perjuries, no lien or interest in the claim could be created by a mere parol agreement.

Secondly, that if such a claim could be so created, and was in fact so created, in this case, that the defendant Redding being a purchaser, without notice, the claim or share in his hands is exonerated therefrom.

Thirdly, that the contract in this case, as set forth in the bill, and as proved at the hearing, was a mere contract for the working of the claims; and did not, and could not, even if it had been under seal, have vested in Jenkins any interest in the claims, or lien thereon.

These several points likewise embrace the questions raised on demurrer, so that in arguing them, we argue the demurrer.

By the Statute of Frauds, the contract declared on was void, as against the defendant Redding.

Judge Barbour, in his somewhat elaborate opinion, assumes, that the interest of Ames and Buss, in their mining-ground, was, in contemplation of law, a less estate than a " leasehold interest of two years."

By what process of reasoning his Honor arrived at this conclusion, he has not seen proper to inform us.

Why he should have fixed upon a term of two years as the standard of comparison, we are at a loss to imagine.

But we deny his proposition *in toto*. If the miner has any interest at all in his claims, it is an estate of greater legal value than any term of years, whether above or under two.

That he has an interest, we all know; for has he not the *jus disponendi*? Can it not be sold to satisfy his debts? Will it not

pass to his personal representatives, or rather to his heirs, after his death? How absurd, then, to say that his estate is less than a leasehold for two years.

We might here enter into a long legal disquisition as to the estate which the miner hath in his claim; and none will deny that the field is sufficiently ample. But it would be labor thrown· away to do so in this case, where no necessity for it exists, and where it might, therefore, expose us to the charge of pedantry. Suffice it to say that, in our opinion, the miner under the permission of the government, has as ample, as perfect, and as appreciable an estate in his mining-claim, as I have in my books, or as I shall have in my homestead, (if fortune ever bestows one on me.)

It is true that we can perceive a distinction between a mining-claim, as such, and the land of which it forms the most essential part, but it is, perhaps, too fine drawn and metaphysical for practical purposes.

But the learned Judge seems not to have noticed the peculiar language of the sixth section of the act concerning fraudulent conveyances, (Com. Laws, 200,) which provides that "no estate or interest in lands, other than leases for a term not exceeding one year; nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, except by deed or conveyance in writing." Com. Laws, 200.

The Court will see that the disjunctive is here used, and "trust and power" are put in opposition to "estate and interest," so that it is very clear that the exception of "leases for one year," applies to "estate and interest," and not to trusts or powers. This is manifestly the true construction, although there may be some confusion in the language used.

Now, the interest of Jenkins, from his own showing, cannot amount to more than a mere trust, though we think it does not even amount to that. It is not an estate or interest (which words we suppose refer to the legal title) in lands, within the meaning of this statute; but, at most, a charge on the estate of the owner of the legal title, and should therefore, if our views of the statute are correct, be created by a written conveyance. Com. Laws, § 25, p. 202.

Moreover, we apprehend that the question of the nature of the miner's estate in his claim, scarcely cuts any figure in this case. For, whether it is a chattel-interest, or partakes of the nature of the realty, it seems to us that a trust cannot be created over it by parol, as against the defendant Redding. As between Ames and Jenkins, a parol trust might perhaps exist; but, as against the defendant Redding, who occupies the position of "an innocent purchaser for a valuable consideration," a parol trust even over a chattel, would not avail. So much for the first point.

We think we have demonstrated that Jenkins had no legal

interest or estate in the claims.   We shall now prove, if it be
necessary, that he had no lien or equitable interest, such as a
Court of Equity will enforce.   The mere statement of the propo-
sition is sufficient to refute it.

That a privilege to work on property should be regarded as
an interest in the property, seems to us the very acme of ab-
surdity.   The right to dig, to grub, to roll heavy rocks, and
shovel huge masses of earthy matter, considered in the light of
a beneficial interest in the soil !   The proposition is at least as
extraordinary as it is new.

Where, in the books of reports, or in the elementary treatises,
will we find a parallel to this back-breaking, patience-destroy-
ing, and Constitution-consuming equity ?   Sysiphus might as
well have pretended to a beneficial interest or trust in the soil
of the hill upon which he was condemned eternally to roll an
immense stone.   Ixion might as well have pretended to have a
trust, executed by the statute of 27 Henry VIII, (for conveying
uses into possession,) in that old fashioned tread-wheel, around
which the justice of the immortals had condemned him to travel,
through illimitable eternity.

To descend to comparisons a shade more terrestrial, the milk-
maid, or dairy-woman, who is engaged to attend the cows of the
farmer, under a contract that she shall receive as the reward of
her precious services, per week, the first pound of butter manu-
factured from each cow, might with equal, nay with greater pro-
priety, claim to have a lien, a trust, or a beneficial interest, in
the cows themselves.   And, doubtless, were such a case to arise
in practice, the learned Judge would so determine.   A doctrine
liable to consequences so absurd, must be absurd in itself.

*Francis J. Dunn* for Respondent.

As a law proposition, the contract under which the respond-
ent took possession, and held and worked the share in dispute,
was a lien upon the same, until the conditions and stipulations
of the same had been fully complied with and paid ; it gave re-
spondent no estate in the property, nor did it make him a lessee,
as he was to pay no rents or yield tribute,—as lease or letting,
defined, " is a conveyance of hereditaments, incorporeal or cor-
porcal, to another, in consideration of certain rents or other re-
compense."   2 Black. Com., 317 ; Shep. Touch., 266 ; Arch. L.
and T., 2 ; 1 Hilliard on R., 212.

Then, in order to create the lien, it was not necessary that the
contract between respondent and Ames and Buss should have
been in writing, in order to bind Ames and Buss, and all persons
claiming subsequently under them or either of them.

The possession passing to and continuing in the respondent,
at the time of the contract, respondent has no estate in the pro-
perty, but only a lien on it, and possession for work already

done, which might descend to his heirs, and for labor to be done' which would not descend, even were the estate in the claims or share held by Buss and Ames, a corporeal hereditament, which I doubt. The right to work, by Jenkins, was not even an incorporeal hereditament. Our Statute of Frauds cannot and does not affect the contracts.

What was the estate of Ames and Buss in the share in dispute, when they contracted with the respondents to have the same worked.

It was an incorporeal hereditament, being a right issuing out of and exercisable within a corporeal hereditament or land. 2 Black. Com., 17–19; 2 Steph. Com., 120, 159; 2 Kent's Com., 402.

And the tenancy being upon the public lands of the United States, and only by permission, could, under the most latitudinal construction, be deemed a tenancy from year to year, acquired without writing, and transferable in the same way, without conflicting with the Statute of Frauds.

But in truth, the tenure of Buss and Ames, and all holding the same right under them, is but that of tenants-at-will, as was fully settled in the case of Duncan v. Potts, (5 Stew. & Por., 182,) which case settles the point more fully than any other case I have been enabled to find, as the adjudications on this point are few—either that the Courts have evaded the point, or that it has not been presented for adjudication.

It was not necessary that the contract should have been in writing, and this Court fully sustains this view where possession followed. In the case of Bird v. Dennison, Cal., April T., 1857; Stafford v. Little, April T., 1857; Johnson v. Ricketts, July T., 1855; Grover v. Hawley, Oct. T., 1855; Norris v. Russel, July T., 1855; Call v. Hastings, 3 Cal., 179; Hastings v. Benicia, July T., 1855; Benham v. Rowe, 2 Cal., 387; Rose v. Mooney, 4 ibid., 173; Israel v. Furguson, April T., 1855; Beech v. Covillaud, 4 Cal., 173; Solomon v. Hoffman, 2 Cal., 138; Tohler v. Folsom, 1 Cal., 207.

In this case, the appellant obtained possession of the share in dispute, as the trustee of all whom it might concern; and first for him or them, who had the first right of possession and claim to the issues and profits arising out of and from the share in dispute. That person was the respondent.

A trustee is defined to be " one to whom property is conveyed, or by whom it is held, or required to. be held, for the use of another." And with the proposition, appellant was and is the trustee of the respondent in this case, and as such can be compelled in equity to account and respond to his cestui que trust; indeed, he only holds for him, subject to the enjoyment and benefit respondent had in the trust-property under his contract. 2 Story Eq. Jur., 964, 965, and 966; 4 Kent's Com., 304.

A trust is a confidence reposed in some other, which is not

issuing out of the land, but as a thing collateral to the estate in the land; the *cestui que trust* having the right, in equity, to dispose of the land, or the profits arising therefrom.

2 Story Eq. Jur., 960, 982; 4 Kent Com., 301, 313; 1 Stephen Com., 321, note d; Brinkerhoof *v.* Lansing, 4 John. Ch. R., 54; Coke on Litt., 143.

TERRY, C. J., delivered the opinion of the Court—BURNETT, J., concurring.

The question in this case is, whether a lease for labor under a verbal contract can attach to a mining-claim, so as to be enforced against such claim in the hands of an innocent purchaser, without notice.

We think the simple statement of such proposition its best refutation.

It is said that the plaintiff was in possession of the claim, and that his possession was a notice of his equities.

The answer to this is clear. He was employed to labor on the claim, and was in possession for that purpose only; he was a mere agent or servant, and his possession was the possession of his employer.

The judgment of the Court below is reversed, and plaintiff's bill dismissed.